1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA 92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
7  Attorneys for Plaintiff

8

9  **UNITED STATES DISTRICT COURT FOR THE**

10  **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUGSUSA LLC, a Delaware limited liability company, dba RUGSUSA.COM, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:23-cv-00024-JWH-ADS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>**(1) PENAL CODE § 631; AND**<br>**(2) PENAL CODE § 632.7**<br><br>Filed: December 1, 2022<br>Removed: January 6, 2023<br>Trial Date: None Set |

## I. INTRODUCTION

**Defendant RugsUSA LLC ("Defendant") (1) secretly wiretaps the private conversations of everyone who communicates through the chat feature at www.rugsusa.com (the "Website"); and (2) allows at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain.**

**Defendant does not obtain visitors' consent to either the wiretapping or the eavesdropping. As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, in numerous ways.**

## II. JURISDICTION AND VENUE

1. Plaintiff Sonya Valenzuela ("Plaintiff") does not dispute Defendant's grounds for removal and the propriety of this Court's jurisdiction and venue pursuant to 28 U.S.C. §§ 1332(a), 1441, 1446, and 1453.

## III. PARTIES

2. Plaintiff is a resident and citizen of Murrieta, California.

3. Defendant is a limited liability company organized under the laws of Delaware with its principal place of business in Stockton, California. Defendant has "thousands of world-inspired rug designs," ships all over "the continental U.S." and claims to have "more than one million customers." (https://www.rugsusa.com/) (last visited Mar. 6, 2023). Defendant also owns, operates, and/or controls the Website, which at relevant times, offered an online "chat" feature for consumers to communicate directly with Defendant through the Website.

4. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendant." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts

alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

5. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

6. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

7. CIPA prohibits both wiretapping of and eavesdropping upon electronic communications without the consent of all parties to the communication. Compliance with CIPA is easy, and the vast majority of website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

8. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant both **wiretaps** the conversations of all website visitors and allows a third party to **eavesdrop** on the conversations in real time during transmission. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight. . .****When people are chatting, you have direct access to their exact pain points.****"). See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited Feb. 26, 2023) (emphasis added).

9. Defendant's wiretapping and eavesdropping are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, Defendant's actions violate both industry norms and the legitimate expectations of consumers.

---

[1] https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("*CIPA Compliance is not difficult. A business must take certain steps. . .with a chat feature. . .to ensure that it obtains valid consent consistent with the holdings of courts interpreting CIPA.*") (last visited Feb. 26, 2023) (emphasis added).

10. To enable the *wiretapping*, Defendant has covertly embedded code into its chat feature that automatically records and creates transcripts of all such conversations in real time. To enable the *eavesdropping*, Defendant allows at least one independent third-party to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors – even when such conversations are private and personal.

11. The illegal scheme works like this: first, Defendant enables an independent, for-profit third-party company ("Zendesk") to intercept, record, and eavesdrop upon private chat conversations with customers. Second, that third party "integrates" with subsidiaries of Meta, Inc., (like Facebook) by sharing the data from those chat transcripts with Meta. Third, Meta sells targeting advertising to companies based in part upon the data from the chat transcripts. Fourth and finally, unsuspecting customers are then bombarded with targeted internet advertising based upon their previous, private chats with Defendant.

12. The third party's independent manipulation, monetization, and exploitation of the data gathered from the intercepted chat transcripts makes it more than a mere "extension" of Defendant.

13. Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions. By contrast, Zendesk actually boasts that it harvests data from the chat transcripts it intercepts, eavesdrops upon, and stores. *See* https://support.zendesk.com/hc/en-us/articles/4408893866778-Reviewing-and-exporting-past-chats-in-History ("*All chats are listed on the History page [and include] Visitor name, email, and phone number, Visitor notes, Number of past visits and past chats by this visitor, Visitor path, Visitor metadata, including location, browser and device information, and IP address. . . .Chats are saved indefinitely, or until they are manually deleted.*") (last visited Feb. 27, 2023) (emphasis added). As such, Zendesk's use of and interaction with the data it is able to gather through the chat feature in real time makes it more than a mere "extension" of Defendant.

14. Given the nature of Defendant's business, visitors may share sensitive personal data and personally identifying information with Defendant via the Website chat feature. Visitors would be shocked and appalled to know that Defendant secretly records those conversations and allows a third party to eavesdrop on them in real time under the guise of "data analytics."

15. On or about August 4, 2022, Plaintiff visited Defendant's Website and communicated with Defendant's Website through the chat feature. Plaintiff is a consumer privacy advocate with dual motivations for initiating a conversation with Defendant. First, Plaintiff was genuinely interested in learning more about the goods and services offered by Defendant. Second, Plaintiff is a "tester" who works to ensure that companies abide by the privacy obligations imposed by California law.

16. Statutes like CIPA are largely enforced by civic-minded testers such as Plaintiff. Indeed, the Ninth Circuit recently made this point clear in *Langer v. Kiser*, 57 F.4th 1085, 1093-94 (9th Cir. 2023) (holding that the conduct of "serial litigants" like Plaintiff is "necessary and desirable" to enforce and advance consumer protection statutes and warning that no impermissibly adverse credibility or standing inferences can be drawn against such parties). Stated differently, as someone who advances important public interests at the risk of vile personal attacks, Plaintiff should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

17. Plaintiff and the Class members used smart phones (cellular telephones with integrated computers to enable web browsing) and/or wifi-enabled tablets and laptops that use a combination of cellular and landline telephony. As such, Plaintiff's and Class member conversations with Defendant were transmitted from "cellular radio telephones" and/or "landline telephones" as defined by CIPA.

18. By definition, Defendant's chat communications from its Website are transmitted to website visitors by either cellular telephony or landline telephony. *See* https://www.britannica.com/technology/Internet ("How does the Internet work?") ("*The*

*Internet works through a series of networks that connect devices around the world through telephone lines.*") (last visited Feb. 27, 2023).

19. Defendant did not inform Plaintiff or the Class members that Defendant was secretly recording their conversations or allowing, aiding, and abetting a third party to intercept and eavesdrop on them in real time, and then use users' data for the own gain.

20. Defendant did not obtain Plaintiff's or the Class members' express or implied consent to wiretap or allow third parties to eavesdrop on visitor conversations, nor did Plaintiff or Class members know at the time of the conversations that Defendant was secretly wiretapping them and allowing third parties to eavesdrop on them.

## V. CLASS ALLEGATIONS

21. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website using telephony subject to Penal Code Section 632.7; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

22. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class members may be ascertained by the records maintained by Defendant.

23. COMMONALITY: Common questions of fact and law exist as to all Class members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class member, include but are not limited to the following:

a. Whether Defendant caused electronic communications from class members with the Website to be recorded, intercepted, and/or monitored;

b. Whether Defendant aided and abetted a third party in eavesdropping on such communications;

c. Whether Plaintiff and Class Members are entitled to statutory penalties; and

d. Whether Class Members are entitled to injunctive relief.

24. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose chat was recorded, intercepted and eavesdropped upon without prior knowledge or consent, Plaintiff is asserting claims that are typical of the Class.

25. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

26. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class members is impracticable and inefficient. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## **FIRST CAUSE OF ACTION**

**Violations of the California Invasion of Privacy Act**

**Cal. Penal Code § 631**

27. Section 631(a) of California's Penal Code imposes liability upon any entity that "by means of any machine, instrument, contrivance, or in any other manner," (1) "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any

internal telephonic communication system," or (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state" or (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section". ***Here, Defendant does all three.***

28. Section 631 of the California Penal Code applies to internet communications and thus applies to Plaintiff's and the Class's electronic communications with Defendant's Website. "Though written in terms of wiretapping, Section 631(a) applies to Internet communications. It makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.' Cal. Penal Code § 631(a)." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022).

29. The software embedded on Defendant's Website to record and eavesdrop upon the Class's communications qualifies as a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct alleged herein.

30. At all relevant times, Defendant intentionally caused the internet communication between Plaintiff and Class members with Defendant's Website to be recorded. Defendant also aided, abetted at least one third party to eavesdrop upon such conversations during transmission and in real time.

31. Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's actions.

32. Defendant's conduct constitutes numerous independent and discreet violations of Cal. Penal Code § 631(a), entitling Plaintiff and Class members to injunctive relief and statutory damages.

# SECOND CAUSE OF ACTION

## Violations of the California Invasion of Privacy Act

## Cal. Penal Code § 632.7

33. Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." As summarized by the California Supreme Court, under section 632.7(a) it is a crime when a person intercepts or records "a communication transmitted between a cellular or cordless telephone and another telephone." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021). Stated differently, only one party to the conversation needs to be using a cellular phone for the prohibitions of section 632.7 to apply.

34. Section 632.7(d)(3) defines "Communication" exceptionally broadly – including not only voice communication, but also communications transmitted by "data, or image, including facsimile." Text messages sent from a smart phone to a computer or internet, like the messages at issue here, are considered data transmissions via cellular telephony to landline telephony, thus subject to Section 632.7. *See* https://www.techtarget.com/searchmobilecomputing/definition/texting ("Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . . ***Users can also send text messages from a computer to a hand-held device. Web texting, as it's called, is made possible by websites called SMS gateways***.") (last visited Mar. 6, 2023) (emphasis added).

35. Courts have applied section 632.7 to materially identical fact patterns. *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, *5 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("Byars accessed Goodyear's website

using her smartphone. As smartphones are cellular phones with web capabilities, Byars' smartphone falls within the cellular phone category…Byars has sufficiently alleged that website users had a reasonable expectation of privacy and therefore the communications fall within the scope of § 632.7.") (emphasis added).

36. Plaintiff communicated with Defendant using telephony subject to the mandates and prohibitions of section 632.7.

37. As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of section 632.7. Defendant also aided and abetted a third party in the interception, reception, and/or intentional recordation of in violation of section 632.7. entitling Plaintiff to injunctive relief and statutory damages..

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Punitive damages;
7. Prejudgment interest;
8. Reasonable attorneys' fees and costs; and

9. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated: March 6, 2023

PACIFIC TRIAL ATTORNEYS, APC

By: *[signature]*
Scott. J. Ferrell
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

                          */s/Scott J. Ferrell*
                                Scott J. Ferrell